**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SHIRLEY ANN BARNUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-315-STE** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.      Procedural Background

Plaintiff's application for benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R § 404.1520. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity after her alleged date of disability. (TR. 13). At step two, the ALJ found Plaintiff to have the following severe impairments: panic disorder with agoraphobia and personality disorder. (TR. 13).

At step three, the ALJ determined neither of Plaintiff's impairments meets or medically equals the severity of one of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ considered the Listing at 12.06, Anxiety Related Disorders, and determined the medical evidence supported a finding that Plaintiff's impairment satisfied the required criteria of Listing 12.06 A, but not the required criteria at 12.06 B or C. (TR. 13-14).

At the first phase of step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple job tasks, and she can have only occasional contact with the public, coworkers, and supervisors.

(TR. 14). At phase two of step four, the ALJ relied on a vocational expert (VE) who identified and described Plaintiff's past relevant work:

> A job as grocery store owner, manager is light skilled, SVP: 6. And her job as a personal care attendant was light, semiskilled, SVP: 3.

(TR. 51). The VE testified the job of personal care attendant, though it is identified as semi-skilled work, could be done by a person with Plaintiff's RFC because the job is not complicated and requires only simple, routine work. (TR. 52). Plaintiff, herself had testified that the duties of her previous job as personal care attendant consisted primarily of house cleaning. (TR. 31). At the third phase of step four, the ALJ determined Plaintiff is capable of performing her past relevant work as a personal care attendant. (TR. 19). The ALJ also noted there are other jobs, existing in the national economy the claimant could perform given her age, education, work experience and RFC. The ALJ did not, however, specifically list any other such jobs, so that finding cannot be considered as an alternative step-five decision.

Accordingly, at step four of the sequential evaluation, the ALJ found Plaintiff was not disabled from the alleged onset date through the date of the ALJ's decision.

## III.   Standard of Review

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## III.   Analysis

Plaintiff has raised two issues for review: whether the ALJ applied the correct legal standard in his analysis of the opinion of Plaintiff's treating psychiatrist, and whether the ALJ's decision is supported by substantial evidence.

### A.

Plaintiff contends the ALJ failed to properly analyze the Medical Source Statement of her treating psychiatrist, Dr. Chesler.

The ALJ set forth the proper legal standard for evaluating the opinion of a treating physician. (TR. 18). A treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2). However, evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted).

When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide, "whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* at 1077. "Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927."

*Newbold v. Colvin*, 718 F.3d. 1257, 1265 (10th Cir. 2013) (quoting *Watkins*, 350 F.3d at 1300).

Since 1992, Plaintiff has been a patient at the Northwest Center for Behavioral Health in Guymon, Oklahoma where she has been treated for anxiety. (TR. 232). For many years prior to her alleged disability onset date, Plaintiff was able to work, despite her anxiety. Her anxiety had been treated with a low dose of Xanax. At times, Plaintiff took Xanax up to five times per day. (TR. 195). On July 25, 2011, however, three months after her alleged disability onset date, Plaintiff reported taking Xanax only two or three times per day. (TR. 234).

In January 2011, Plaintiff reported to her case manager, Barbara Carter, RN, that her work hours as a personal care attendant had been cut to four hours per week. Plaintiff also stated she had begun isolating herself at home again. (TR. 203). On March 23, 2011, Plaintiff's case manager called Plaintiff to check on her wellbeing. Plaintiff's brother had died on March 2, 2011, only sixteen days after her father had died. (TR. 200). On May 26, 2011, Plaintiff reported marital and familial problems. She also stated that her work hours had been cut down to a few a week, resulting in her feeling trapped in her marriage because she "really [had] no income to speak of." (TR. 192). The case manager noted that she and Plaintiff would discuss applying for disability benefits at her next appointment.

On September 11, 2012, Plaintiff's diagnosis, rendered by her treating psychiatrist, Don Chesler, M.D., was panic disorder with agoraphobia and personality disorder. (TR. 257). Dr. Chesler completed a Mental Medical Source Statement on the same date. The form reflects Dr. Chesler's opinion that Plaintiff is markedly limited in the ability to maintain concentration for extended periods, to interact appropriately with the general public, and to set realistic goals or make plans independently of others. He found Plaintiff to be severely limited in the ability to travel in unfamiliar places or use public transportation. (TR. 254-256).

The ALJ determined Dr. Chesler's opinion was not entitled to controlling weight. The ALJ found that not all functional limitations assessed by Dr. Chesler are consistent with the treatment records. (TR. 18). Specifically, the ALJ noted claimant's complaints were based primarily on financial, marital or familial issues and that her anxiety largely stemmed from those issues. The ALJ also found Dr. Chesler's statement that Plaintiff had "'some anxiety'" to be vague, and contrary to Plaintiff's allegations of severe, debilitating symptoms of anxiety. Because Plaintiff testified she can leave her house for a variety of reasons and is able to care for her grandchildren, the ALJ found the actual impact of Plaintiff's mental limitations, as reported by Plaintiff, questionable. (TR. 19). The ALJ also questioned Plaintiff's credibility, based on the timing of her alleged onset date. The date coincided with Plaintiff's loss of her client for whom she had been a personal care assistant. (TR. 17). Nevertheless, the ALJ adopted Dr. Chesler's opinion to

the extent the opinion reflected Plaintiff's marked limitation in social interaction, but he rejected Dr. Chesler's finding of a "marked" limitation in the ability to maintain attention and concentration of extended periods. (TR. 18). The ALJ assigned little weight to Dr. Chesler's other opinions regarding Plaintiff's functional limitations. (TR. 18).

In this case, the ALJ, as required, gave "good reasons" for his decision regarding the weight to afford Dr. Chesler's opinion. Those reasons are sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and why that weight was given. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).

Plaintiff contends the ALJ erred in the assignment of weight given to the opinion of Dr. Chesler, in that Dr. Chesler's opinion is not contradicted by other medical opinions in the record. In support of this argument, Plaintiff relies on the ALJ's having given "little weight" to the mental RFC of the State agency medical consultant regarding Plaintiff's functional limitations. Plaintiff argues that, because the ALJ gave the same weight to the opinions of the treating physician and the State agency medical consultant's Mental RFC, there is no evidence contradicting Dr. Chesler's Medical Source Statement. Therefore, Plaintiff reasons, the ALJ based his evaluation of Dr. Chesler's Medical Source Statement on a selective review of the record and the ALJ's own lay opinion.

Plaintiff's argument fails to take into account the ALJ's finding that Dr. Chesler's opinion is not supported by Dr. Chesler's own medical records of Plaintiff's treatment. (TR. 18-19). Additionally, the "evidence" in question is the August 22, 2011, Psychiatric Review Technique (PRT) form and the Mental Residual Functional Capacity Assessment (MRFC) completed by Dr. Sally Varghese, a State agency psychiatrist. Neither the PRT nor the MRFC is actually a "medical opinion." Rather, the PRT is designed to assess whether an MRFC is needed and the category of mental impairment upon which the diagnosis is based. If a mental impairment is evident, the PRT requires a determination of functional limitations resulting from the mental impairment.

Dr. Varghese determined an anxiety-related disorder was present that "does not precisely satisfy the diagnostic criteria" of Listing 12.06. (TR. 222). To meet Listing 12.06, a claimant must satisfy the "A criteria" and either the "B criteria" or the "C criteria" of the Listing. Dr. Varghese evaluated Plaintiff's alleged symptoms under the four criteria set forth in part B of Listing 12.06. To satisfy the part "B criteria," a claimant's anxiety disorder must result in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.06 B.

To satisfy the "C criteria" a claimant's anxiety disorder must result in "complete inability to function independently outside the area of one's home." Listing 12.06 C. (TR. 228). Dr. Varghese determined Plaintiff is mildly restricted in her activities of daily living; moderately limited by difficulties in maintaining social functioning; and mildly limited by difficulties in maintaining concentration persistence or pace and has experienced no episodes of decompensation. (TR. 227). Dr. Varghese determined that Plaintiff had not established the presence of the criteria required to meet part C of Listing 12.06. (TR. 228). Therefore, the findings in the PRT support the ALJ's step-three finding that Plaintiff's mental impairment does not meet or equal Listing 12.06.

Dr. Varghese's analysis of the evidence includes her undisputed finding that Plaintiff is cognitively intact; that she is capable of performing simple work, but limited in her ability to interact adequately with the general public. (TR. 229).

The MRFC is designed to assess the functional limitations caused by a claimant's mental impairments. In the MRFC, not to be confused with the analysis of the "part B criteria" of Listing 12.06 in the PRT, Dr. Varghese found Plaintiff to be markedly limited in the ability to understand and remember detailed instructions; markedly limited in the ability to carry out detailed instructions; and markedly limited in the ability to interact appropriately with the general public. Dr. Varghese concluded that, although Plaintiff could not relate to the general public, she nevertheless retained the residual functional capacity to perform simple tasks with routine supervision, to relate to supervisors and

peers on a superficial work basis, and to adapt to a work situation. In short, no functional limitations assessed by Dr. Varghese in the MRFC actually contradict the ALJ's RFC determination, even though the ALJ purportedly afforded the MRFC findings "little weight." The ALJ did not err in his evaluation of Dr. Chesler's Medical Source Statement.

### B.    Substantial Evidence

Plaintiff contends the ALJ's decision is not supported by substantial evidence in the record as a whole. The focus of Plaintiff's argument is the ALJ's step-four finding that Plaintiff can perform her past relevant work as a personal care attendant, identified by the VE as "semiskilled" work with an "SVP of 3." (TR. 51). A Specific Vocational Preparedness (SVP) of three indicates a job requiring more than one month, and up to and including three months, to learn. Dictionary of Occupational Titles, (DOT), Vol. II, App. C at 1009. Plaintiff contends "semiskilled work" is incompatible with the ALJ's RFC finding that Plaintiff is limited to "simple job tasks." (TR. 14).

In his testimony at the administrative hearing, the VE was given the hypothetical example of a person of Plaintiff's age, education and work history, with no exertional restrictions, limited to "simple job tasks and occasional public contact." (TR. 52). When asked if such a hypothetical person would be able to return to any of Plaintiff's past relevant work, the VE testified that such a person could perform Plaintiff's past relevant work as a personal care attendant. The VE described the job as requiring only a "simple

routine work." (TR. 52). Moreover, Plaintiff testified her job consisted mostly of cleaning for her client. (TR. 31). The pertinent Social Security Ruling explains that a claimant will be found to be 'not disabled' when he or she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or

> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

S.S.R. 82–61, 1982 WL 31387, at *2.

Accordingly, the testimony of the VE supports the ALJ's step-four decision that Plaintiff is not disabled. The decision of the ALJ is, therefore, supported by substantial evidence in the record. The final decision of the Commissioner is, therefore, **AFFIRMED.**

**ENTERED** on June 30, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE